**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Keith GRAVES, Defendant–Appellant.**

**No. 89–50391.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1990.

Decided July 16, 1990.

Debra P. Kanevsky, Asst. Federal Defender, San Diego, Cal., for defendant-appellant.

Judith S. Feigin, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before CANBY and LEAVY, Circuit Judges, and PRICE[1], District Judge.

PRICE, District Judge:

The defendant, Keith Graves, was charged by indictment with three counts arising out of an aborted drug transaction. Specifically, the defendant was charged in count one with assaulting and interfering with Drug Enforcement Administration Special Agent Love in the performance of his duties by the use of two loaded semi-automatic handguns, in violation of 18 U.S.C. §§ 111 and 1114. In count two, defendant Graves was charged with assault by means of an automobile on Drug Enforcement Administration Special Agent Purdy, in violation of 18 U.S.C. §§ 111 and 1114. In count three, Graves was charged with carrying a firearm during and in relation to a crime of violence; i.e., assault on a federal officer in violation of 18 U.S.C. § 924(c)(1).

Defendant Graves entered a plea of guilty to counts one and three of the indictment. Count two of the indictment was dismissed at the time of sentencing as part of the plea negotiations.

The essential facts are not disputed. After defendant Graves and his co-defendant negotiated the sale of a small amount of a controlled substance to a confidential informant, they met with the confidential informant and undercover Agent Love of the Drug Enforcement Administration and negotiated the sale of one kilogram of rock cocaine. The sale was scheduled to take place on November 29, 1989, at 11:30 a.m. Defendant Graves and his co-defendant could not obtain the drugs they had agreed to sell, so they planned to rob the buyer.

At the appointed time, undercover Agent Love and the confidential informant arrived at the appointed place. Defendant Graves and his co-defendant, Adams, were observed in a red Mitsubishi. Defendant Graves demanded the money. A discussion ensued about what would be produced first, the money or the drugs. After a short discussion, co-defendant Adams drew a gun, shoved it in Agent Love's face and demanded the money. Defendant Graves then drew his gun and pointed it at Love and then at the informant.[2] Love began struggling with Adams to secure the gun from Adams' possession. After seizing Adams' gun, Love then turned the gun toward defendant Graves. Defendant Graves ran to the Mitsubishi. Love pursued him. Defendant Graves began driving the car with Love hanging on the moving car.

Simultaneously, surveillance officers were moving toward the Mitsubishi. These officers were in both marked and unmarked cars. Special Agent Purdy of the Drug Enforcement Administration was in an unmarked car. Purdy noticed that defendant Graves was driving the Mitsubishi directly in his path. Although Purdy attempted to avoid the collision, he was unable to do so. The cars collided, and Graves continued for a short distance.

Purdy estimated Graves' speed to be fifty miles per hour at the time of impact. Purdy felt that the collision was deliberate. As a result of the collision, Purdy suffered some pain in his back and neck, but did not require hospitalization or seek medical care. He lost no time from work; indeed, he continued his work on this case for the next two days.

On count one, defendant Graves was sentenced to twenty-four months imprisonment. On count three, defendant Graves was sentenced to five years imprisonment.

---

1. The Honorable Edward Dean Price, District Judge for the Eastern District of California, sitting by designation.

2. Graves denies that he pulled his gun and pointed it at Agent Love. However, that fact is immaterial to the issues we must decide.

The sentencing judge determined that these sentences should run consecutively.

Defendant Graves appeals his sentence. Defendant Graves' counsel concedes that the sentence as to count three is correct, inasmuch as the conviction under that code section carries a mandatory sentence of five years.[3]

The focus of the attack on the sentence imposed on defendant Graves is directed to count one, the assault on Special Agent Love. Pursuant to § 2A2.2(b)(3)(A) of the guidelines, the offense level was increased by two. This increase was based upon the fact that at an evidentiary hearing, Special Agent Purdy testified that he had experienced pain in his back and neck after the crash with the car driven by defendant Graves.[4] Special Agent Purdy admitted that he was not hospitalized nor did he seek medical attention. The district court accepted the conclusion of the probation officer that Special Agent Purdy sustained bodily injury within the meaning of Guideline section 2A2.2(b)(3).

However, the count that charged the assault on Special Agent Purdy was dismissed at the time of sentencing. Count one charged an assault on Special Agent Love. The record is devoid of any evidence that Special Agent Love received any injury as a result of this altercation.

Chapter 2, Part A, of the Sentencing Guidelines is entitled "Offense Against The Person." The sentence under which Graves' offense level was established is § 2A2.2, Aggravated Assault. Subsection (b)(3) of that Guideline provides:

> If *the victim* sustained bodily injury, increase the offense level according to the seriousness of the injury.
>
> | Degree of Bodily Injury | Increase in level |
> |---|---|
> | A Bodily Injury | Add 2 |

§ 2A2.2(b)(3)(A) (emphasis added)

A common sense reading of this provision is that "the victim" refers to the victim of the aggravated assault of which the defendant stands convicted.

The government contends, however, that the injury to Agent Purdy may nevertheless add to the offense level under Guideline § 1B1.3, Relevant Conduct (Factors that Determine the Guideline Range). That section provides:

> (a) *Chapters Two (Offense Conduct) and Three.*.
>
> Unless otherwise specified ... (ii) specific offense characteristics ... shall be determined on the basis of the following:
>
> (1) all acts and omissions committed or aided by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction ... or in the course of attempting to avoid detection or responsibility for that offense ...

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

---

**3.** Title 18 of the United States Code, § 924(c)(1) provides in pertinent part:

> Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years,....

Title 18 of the United States Code, § 924(c)(3) provides:

> For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

**4.** The government contends that defendant Graves should not be allowed to complain that his offense level for aggravated assault was raised from 15 to 17 because he pleaded guilty in the "expectation" that the offense level would be calculated at 18. We reject the contention. His mere "expectation" should not estop Graves from appealing on the statutory ground that his sentence was "imposed as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(a)(2). *See* also Guideline § 6B1.2(b), (c) (recommended or agreed sentence may be accepted only if within applicable guideline range or if it departs for justifiable reasons).

Because the collision with Purdy's car occurred while defendant Graves was attempting to get away, the government contends that § 1B1.3(a)(1) requires the injury to Purdy to be taken into account as an offense characteristic, thus increasing the offense level.

The government's argument is not without force, but we conclude that it distorts the meaning of the term "the victim" in § 2A2.2(b). As we have said, a normal reading of that term refers to the victim of the charged assault. The scheme of Chapter 2 generally supports the same reading. For example, § 2A3.1, Criminal Sexual Abuse, provides for an increase of 4 levels "if the victim has not attained the age of twelve years." § 2A3.1(b)(2). Surely it would be inappropriate to make this addition if the defendant, fleeing from the scene of sexual abuse of a child or other victim, negligently collided with another vehicle and injured a passenger under age 12. Further, it should be noted that the same use of the term "victim" occurs throughout the section entitled, "3. Criminal Sexual Abuse," and "4. Kidnapping, Abduction, Unlawful Restraint."

By analogy, then, we conclude that "the victim" as the term is used in § 2A2.2(b)(1), refers only to the victim of the aggravated assault of which the defendant is convicted. Section 1B1.2(a), upon which the government relies, applies "[u]nless otherwise specified." We conclude that the specific reference to "the victim" in § 2A2.2(b)(3) falls within the "otherwise specified" exception of § 1B1.3(a).

In this case, the dismissed count of the indictment, which the district court considered concerning Special Agent Purdy's injury, cannot be used in the manner it was to increase the offense level of count one.

We reverse the judgment of the trial court as to count one, and remand for resentencing in accordance with this Opinion.