UNITED STATES of America, Plaintiff–Appellee,

v.

Craig HOYUNGOWA, Defendant–Appellant.

No. 89–10485.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 17, 1990.

Decided April 16, 1991.

David G. Alvarez, Federal Public Defender, Phoenix, Ariz., for defendant-appellant.

Linda A. Akers, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before TANG, NORRIS and FERNANDEZ, Circuit Judges.

TANG, Circuit Judge:

Craig Hoyungowa appeals the district court's upward departure from the Sentencing Guidelines in sentencing him for the murder of Dean James, a Bureau of Indian Affairs officer. The district court departed upwardly because of Hoyungowa's criminal history, the psychological impact on James' family, and the victim's status as a law enforcement officer. We reverse and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 17, 1988, Hoyungowa and two juveniles were hitchhiking together on the Hopi Indian Reservation in Arizona. Hoyungowa, who was twenty-three years old, had escaped from detention on misdemeanor charges in the Hopi Tribal Jail. Two state warrants for Hoyungowa's arrest were also outstanding; one for failure to appear in court in Flagstaff, Arizona, and another for kidnapping in Gallup, New Mexico.

According to the two juveniles, Dean James, a police officer with the Bureau of Indian Affairs, stopped his vehicle near the three hitchhikers and asked Hoyungowa to identify himself. The two juveniles fled, they said, when Hoyungowa pulled out a sawed-off rifle and pointed it at James. Hoyungowa stated that, as he was backing away from James, he tripped, causing the rifle to fire. The bullet struck James. Evidently, James returned the fire, hitting Hoyungowa twice. Officers arriving on the scene found James dead behind his steering wheel and Hoyungowa lying wounded on the ground. Officers arrested Hoyungowa at the scene for James' murder.

Pursuant to a plea agreement, Hoyungowa pleaded guilty to second degree murder, in violation of 18 U.S.C. § 1111, and to use of a firearm in a violent crime.

The Presentence Report's Sentencing Guidelines calculations resulted in a maximum sentence of 235 months, including a mandatory sixty months for use of a firearm. The calculations included an upward adjustment of three points for an "Official Victim," Officer James. *See Sentencing Guidelines*, Guideline § 3A1.2. The Report also set Hoyungowa's "Criminal History Category" at level II. The Report listed four state court convictions, three for shoplifting and one for "weapons misconduct." The Report also listed three other arrests, as well as the two outstanding state warrants. Finally, the Report noted three ju-

venile and sixteen adult Hopi tribal arrests or convictions for intoxication (eight), contempt (two), probation violation (one), assault and battery (three), breaking and entering (one), disorderly conduct (two), discharging a firearm (one), and malicious mischief (one). The Report relied only on Hoyungowa's four state court convictions, however, in determining his criminal history category under the Guidelines.

The Report concluded that the district court could depart from the Guidelines in Hoyungowa's case because of the two state warrants, his tribal criminal record, the killing of a law enforcement officer, and his danger to the community. The district court notified the parties of its intent to depart upward in sentencing, citing Hoyungowa's tribal record and the "psychological injury suffered by" James' family.

On September 18, 1989, the district court held Hoyungowa's sentencing hearing. Defense counsel successfully argued for reduction of Hoyungowa's criminal history category to level I because two of the four state court convictions occurred without benefit of counsel.

The district court decided to depart upward from the recalculated maximum Guideline range of 210 months to 300 months. The district court explained:

> The sentence imposed is an upward departure because the defendant's—and the justification therefore among other reasons specifically is the defendant's uncounseled misdemeanor for misconduct involving weapons, Arizona Revised Statute Section 13–3102, in Flagstaff, Arizona, on 10–7–87, and his 16 tribal convictions significantly underrepresents the seriousness of the defendant's criminal history. And in view of the convictions for weapons misconduct, breaking and entering, and repetitive assault and battery episodes, the Court finds that there would be a high likelihood that the defendant would commit further crimes; secondly, the extreme psychological injury suffered by the additional victims of this criminal conduct, the decedent's wife and his four children.

> The reason for the sentence imposed in addition to the reasons for the departure are that the defendant confronted, shot, and killed a law enforcement officer. The defendant has an extensive record of criminal misconduct, including weapons misconduct, breaking and entering, and assaultive behavior. The defendant's criminal conduct not only terminated the victim's life, but brought intense grief and suffering to the victim's wife and four children.

Hoyungowa appeals only the upward departure.

## STANDARD OF REVIEW

■ We have not yet resolved in this circuit what standards of review apply to departures from the Sentencing Guidelines. *See United States v. Lira–Barraza*, 897 F.2d 981, *reh'g granted en banc*, 909 F.2d 1370 (9th Cir.1990). Nonetheless, we have available well-developed standards with which to review the three grounds for departure the district court cited in Hoyungowa's case. We determine first whether a departure is permissible under the Sentencing Guidelines on the grounds relied on by the sentencing court. *See United States v. Ward*, 914 F.2d 1340, 1347 (9th Cir.1990) (*citing United States v. Michel*, 876 F.2d 784, 786 (9th Cir.1989)). If the sentencing court based the departure on factors that the Sentencing Commission already considered in formulating the Guidelines, then the departure is impermissible. *See id.; United States v. Nuno–Para*, 877 F.2d 1409, 1413–14 (9th Cir.1989); 18 U.S.C. § 3553(b); *Sentencing Guidelines*, Chap. 1, Part A, § 4(b) at 1.6. Whether the Sentencing Commission already considered factors is obviously subject to de novo review. Moreover, we review de novo the sentencing court's legal interpretation of the Guidelines. *See United States v. Howard*, 894 F.2d 1085, 1087 (9th Cir.1990). Finally, we conclude that, regardless of the standard of review ultimately adopted in this circuit, we must reverse as a matter of law the district court's upward departure in Hoyungowa's case.

## DISCUSSION

### I. *Departure for Criminal History*

█ Where calculation of a defendant's criminal history under the Guidelines does not adequately reflect the criminal record, upward departure from the Guidelines' range may be appropriate. Sentencing Guideline § 4A1.3; *United States v. Cervantes–Lucatero*, 889 F.2d 916, 918 (9th Cir.1989); *United States v. Chavez–Botello*, 905 F.2d 279, 281 (9th Cir. 1990) (per curiam). Such departures entail two steps. First, the departing court must specify the events in a defendant's criminal record inadequately represented in the Guidelines' criminal history calculation. *See Cervantes–Lucatero* 889 F.2d at 918; *Sentencing Guideline* § 4A1.3. Review of the record indicates that the district court sufficiently specified that Hoyungowa's level I criminal history category under the Guidelines failed to reflect his tribal criminal record of sixteen offenses.

█ Second, a departing court must also explain "which criminal history category it used or how it arrived at a sentence." *Cervantes–Lucatero*, 889 F.2d at 919; *Chavez–Botello*, 905 F.2d at 281. *See also Sentencing Guideline* § 4A1.3. The parties agree and the record bears out that Hoyungowa's sentencing court did not explain how his tribal criminal record warranted all or part of the ninety-month upward departure the court imposed. The government concedes that the district court's failure to explain the level of its upward departure requires remand for Hoyungowa's resentencing. *See Cervantes–Lucatero*, 889 F.2d at 919 (because "the district court did not indicate which criminal history category it used or how it arrived at a sentence ..., we could not review the reasonableness of departure" and remand was required). Indeed, our precedent in criminal history departures cases requires remand for resentencing in Hoyungowa's case. *See id.; Chavez–Botello*, 905 F.2d at 281.

### II. *Departure for Extreme Psychological Injury*

█ The district court specifically cited the "extreme psychological injury" to James' family as a ground for upward departure. In departing upward for extreme psychological injury to James' family, the court relied on Guideline § 5K2.3, a policy statement explaining when extreme psychological injury may warrant upward departure:

> If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to which the injury was intended or knowingly risked.

As Hoyungowa argues, this Guideline applies by its plain terms only to the direct victim of the crime and not to others affected by the crime, such as James' family. We agree that this Guideline fails to support the district court's upward departure in sentencing Hoyungowa. *See United States v. Graves*, 908 F.2d 528, 531 (9th Cir.1990) (the term "victim" in Guideline § 2A2.2(b) includes only the direct victim of the crime charged and not others affected by it).

If the Guideline for extreme psychological injury also applied to those affected by crimes such as James' family, then the justice system would punish the murderer of the head of a household more harshly than the murderer of a transient. The Sentencing Guidelines admit of no such sentencing disparity. We hold that Guideline § 5K2.3 applies only to direct victims of the charged offense. We therefore reverse the district court's upward departure from the Guideline range calculated for Hoyungowa to the extent the district court relied on Guideline § 5K2.3 for departure.

### III. *Departure for Police Officer Victim*

█ Hoyungowa's maximum 210 month sentence under the Guidelines already included an upward adjustment of his base offense by three levels for killing an "official victim." *See* Sentencing Guideline § 3A1.2. Nonetheless, it appears that the

district court considered the fact that the victim was a police officer when it imposed the upward departure. We say "appears" because the district court did refer to the fact that Hoyungowa "confronted, shot, and killed a law enforcement officer" in the midst of its discussion of factors justifying an upward departure. However, we are unsure because that particular reference was preceded by language that indicated this was a reason for the sentence which was "in addition to the reasons for the departure...." If the court did depart on that basis, it impermissibly based the departure on factors that the Sentencing Commission already considered in formulating the Guidelines. *Ward,* 914 F.2d at 1347; *Nuno–Para,* 877 F.2d at 1413–14. Because we must vacate the sentence in any event, we want to assure that the district court will not fall into the error of relying on James' status as a law enforcement officer as a ground for departure.

 The government argues that Hoyungowa's murder of James was unusually aggravated, thus warranting departure, because James lost his life merely by approaching Hoyungowa in a "nonconfrontational" manner for identification. Moreover, the government argues, Hoyungowa's status as a fugitive aggravated the murder. The Guideline requiring upward adjustment for an official victim, however, also requires that "the offense of conviction was motivated by such [official] status." *Sentencing Guideline* § 3A1.2. The government's arguments for aggravation, then, amount merely to the Guideline requirement that Hoyungowa have killed James precisely because he was a law enforcement officer. The circumstances thus warrant application of the existing Guideline for official victims and not departure from the Guidelines.[1]

---

1. The government further argues that Sentencing Guideline § 4A1.1(d) provides for upward adjustment of a defendant's criminal history category where the defendant was a fugitive when committing the crime for which sentenced. As the government argues, the Guidelines seem to fail to account for fugitives from tribal justice such as Hoyungowa. Therefore, the government argues, departure was proper to account for Hoyungowa's fugitive status from tribal jail. We cannot affirm the sentencing court merely because some unusual but uncited circumstances *could* have warranted the upward departure, however. Instead, the sentencing court must itself adequately articulate its grounds for departure. *Cervantes–Lucatero,* 889 F.2d at 919.

## CONCLUSION

We vacate Hoyungowa's sentence and remand his case to the district court for resentencing. Upon resentencing, the district court should articulate any grounds for departure with specific reference to the Sentencing Guidelines. Further, the district court should explain by analogy or reference to the Sentencing Guidelines themselves the duration of any departure imposed.

REVERSED and REMANDED.