946 F.2d 899
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harrison Victor BONITO, Defendant-Appellant.
 No. 90-10649.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 8, 1991.*
Decided Oct. 11, 1991.
 
 1
 Before GOODWIN and WILLIAM A. NORRIS, and DAVID R. THOMPSON, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 Harrison Bonito appeals his conviction by a jury for involuntary vehicular manslaughter and his sentence of 36 months imprisonment.
 
 
 4
 On the evening of May 7, 1988, Darlene Brown died when a truck driven by appellant collided with her vehicle on Highway 70 on the San Carlos Indian Reservation. Five of her children also sustained injuries. The evidence showed that appellant was intoxicated at the time of the accident.
 
 
 5
 * Appellant argues that the district court erred in sustaining the government's objection when defense counsel attempted to cross-examine FBI agent Leon Fish about his pretrial interview of Crystal Brown, the eight-year old daughter of the deceased, and in particular about a prior statement that she had made regarding the color of defendant's truck. We review a trial court's decision to limit the scope of cross-examination for abuse of discretion. United States v. Bonanno, 852 F.2d 434, 439 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989).
 
 
 6
 Federal Rule of Evidence 613(b) provides that extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny that statement. Crystal Brown had previously been called to testify by the government and had been cross-examined by defense counsel. Defense counsel did not ask Crystal Brown about her prior statement, and the record reveals that no government objections prevented him from doing so. Given these circumstances, the trial court did not abuse its discretion in limiting defense counsel's cross-examination of Fish.[1]
 
 II
 
 7
 Appellant argues that the results of his blood test should have been suppressed because he was not arrested prior to the withdrawal of his blood sample as required by United States v. Harvey, 701 F.2d 800, 805 (9th Cir.1983). We review the district court's findings of fact relating to suppression of evidence for clear error but review de novo the application of the Fourth Amendment to those facts. United States v. Attson, 900 F.2d 1427, 1429 (9th Cir.), cert. denied, 111 S.Ct. 393 (1990).
 
 
 8
 The United States concedes that appellant was not under arrest at the time his blood was drawn, but argues that appellant consented to the procedure by initialing a consent form. Appellant testified that he did not initial the consent form, 1 Reporter's Transcript ("RT") at 43, but the detective who obtained the blood sample testified that appellant did initial the form, 1 RT at 29. Appellant also argues that he did not understand the form, but appellant demonstrated at the suppression hearing that he was able to read the form. 1 RT at 42-43. We hold that the district court's finding of fact that appellant understood and initialed the consent form was not clearly erroneous.
 
 
 9
 Finally, relying on Harvey, appellant argues that the consent form was invalid because it pertained to state traffic safety laws that do not apply within the reservation. Appellant's reliance on Harvey is misplaced. In Harvey we held that Montana's implied consent law did not apply within an Indian reservation. 701 F.2d at 805. The instant case does not involve implied consent, but the consent of a fully conscious person given by initialing a form. Assuming arguendo that Arizona's traffic safety laws did not apply within the reservation, we hold that the form was sufficient to express appellant's consent for the purposes of the Fourth Amendment because it clearly indicated that the signer was consenting to the withdrawal of blood.
 
 III
 
 10
 Appellant argues that the district court erred in permitting the United States to mention Arizona's presumption of intoxication for a blood alcohol level over .10% because that presumption does not apply within the reservation. See, e.g., 1 RT at 131. However, even assuming that it was an error for the trial court to permit the presumption to be mentioned, we hold that the error was cured by the testimony of a qualified expert regarding the effects of appellant's .21% blood alcohol level. Harvey, 701 F.2d at 806 n. 3.
 
 
 11
 Appellant also argues that his right to exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963), was violated by the prosecution's failure to provide him with evidence establishing that the blood test was conducted in accordance with Arizona regulations. Compliance with Brady is reviewed de novo. United States v. Pisello, 877 F.2d 762 (9th Cir.1989). Brady is violated only if the evidence that the prosecution refuses to produce is material. United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir.1988). Because the blood test in this case was conducted by a qualified person and in accordance with procedures that the state accepts as valid, 2 RT at 174, we hold that the evidence requested by the defense was not material.
 
 IV
 
 12
 Appellant next argues that the trial court erred in not suppressing appellant's statement to a Bureau of Indian Affairs investigator because that statement was not voluntary. We review the voluntariness of a statement de novo. United States v. Wilson, 838 F.2d 1081, 1086 (9th Cir.1988). The investigator advised appellant that he was not under arrest and that he would not be arrested after the interrogation. 1 RT at 66. Appellant contends that, in so doing, the investigator created an aura that appellant would not be arrested if he cooperated. This argument is meritless. The record does not support an inference that the investigator conditioned his statement that appellant would not be arrested upon appellant's cooperation. This case is nothing like United States v. Tingle, 658 F.2d 1332, 1336 (9th Cir.1981), in which the law enforcement official threatened the defendant that if she did not cooperate she would not see her child "for a while." We hold that appellant's statement to the BIA investigator was voluntary and admissible.
 
 V
 
 13
 Appellant argues that the trial court erred in departing upward from the Sentencing Guidelines. We review departures from the guidelines according to a three-step process. United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc).
 
 
 14
 First we must determine de novo whether the trial court has identified an aggravating circumstance that the guidelines did not adequately take into account and that is consistent with the sentencing factors prescribed by Congress. Id. Here, the trial court stated that its upward departure was based on the injuries that the deceased's five children sustained in the collision. 4 RT 10. Because the guideline for involuntary manslaughter, U.S.S.G. § 2A1.4, makes no reference to injuries sustained by others, the trial court did identify an aggravating circumstance that the Sentencing Commission did not take into account. Because Congress instructed the Commission to take into account "the nature and degree of the harm caused by the offense, including whether it involved ... a number of persons," 28 U.S.C. § 994(c)(3), we hold that this aggravating circumstance is consistent with the factors prescribed by Congress.[2]
 
 
 15
 Step two of the Lira-Barraza inquiry requires us to determine if the trial court clearly erred in finding that the aggravating circumstance exists in this case. Lira-Barraza, 941 F.2d at 746-47. The record supports the trial court's finding. See 2 RT 57-59.
 
 
 16
 The final step in the Lira-Barraza inquiry requires us to determine if the extent of the trial court's departure was "unreasonable." Lira-Barraza, 941 F.2d at 747. In determining the reasonableness of the scope of departure, we find a useful structural analogy in U.S.S.G. § 2A2.2(3)(b), which provides for a two point enhancement where the victim of an aggravated assault sustains bodily injury. The trial court enhanced appellant's base offense level by one point for each of the five injured children, and we hold that this was not unreasonable.
 
 VI
 
 17
 Because we hold that the district court did not err on any of the grounds asserted by appellant, we also reject appellant's cumulative error argument.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Appellant's reliance on United States v. Williams, 668 F.2d 1064 (9th Cir.1981), is misplaced. In Williams, extrinsic evidence of a prior inconsistent statement was introduced only after the witness had had the chance to explain or deny the statement. Id. at 1068-69
 
 
 [2]
 Appellant's reliance on United States v. Hoyungowa, 930 F.2d 744 (9th Cir.1991), is unpersuasive. In Hoyungowa we held that the district court could not depart upward for "extreme psychological injury" to a murder victim's family because "then the justice system would punish the murderer of the head of a household more harshly than the murderer of a transient." 930 F.2d at 747. In the instant case, the trial court did not depart upward because the deceased had five children but because those five children were riding in her truck and were injured in the same collision
 United States v. Graves, 908 F.2d 528 (9th Cir.1990), is likewise inapposite. Graves involved the interpretation of particular words in a different guideline that do not appear in this guideline. Furthermore, Graves was an enhancement case not an upward departure case.