**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Frank R. ALBER, Defendant–Appellant.**

**No. 93–10408.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 1994.

Decided June 6, 1995.

Atmore L. Baggott, Phoenix, AZ, for defendant-appellant.

Charles F. Hyder, Asst. U.S. Atty., Phoenix, AZ, for plaintiff-appellee.

Before: FLETCHER, HALL, and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Frank R. Alber appeals his guilty plea conviction and sentence. Alber pleaded guilty to one count of mailing a threatening communication, in violation of 18 U.S.C. § 876, and one count of conspiring to mail a threatening communication, in violation of 18 U.S.C. § 371. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part and remand in part.

## I. FACTS AND PRIOR PROCEEDINGS

In November of 1989, Alber was employed by Marc Kaplan to do computer work for Kaplan's company. Alber became friends with the Kaplan family. When the business began to fail, he accepted a pay cut. Later, he and others were laid off. Some employees were reinstated when the business began to recover, but Alber was not.

Alber's life began to fall apart. He was unemployed. His business partnership failed. His girlfriend left him. He lost his townhouse through foreclosure. He was forced to sell his car. He was drinking heavily. Ultimately, Alber began to blame Marc Kaplan for his problems.

On February 6, 1992, Alber mailed a letter to Marc Kaplan. The envelope was marked "TO BE OPENNED [sic] BY MARC ONLY" and was sent to Kaplan's business address. The letter demanded that Kaplan pay $250,000 in cash within one week, or Kaplan's twelve-year-old son's arm or leg would be amputated by a group of former "officers in the special forces." The letter warned that these officers had previously committed similar violent acts of extortion. The letter indicated that Kaplan would receive a call on February 13, 1992, giving instructions. The letter was typed on Alber's computer. Kaplan reported the matter to the FBI.

Alber persuaded an acquaintance, Richard Fair, to make the February 13, 1992 phone call to Marc Kaplan.[1] Fair instructed Kaplan to find a note attached to a pole at a closed bank. A fingerprint of Michael Miller was later found on the phone used to call Kaplan.

The note instructed Kaplan to drive to a lake and go to a boat ramp. Kaplan did so. Two cars, one registered to Miller and one registered to Mark Nelson, were observed by government agents at the lake. The two cars were parked side by side. At the boat ramp, Kaplan found another note and a suitcase. The note instructed him to put the cash in the suitcase, drive to a specified location, and place the suitcase in a box, and bury it. Kaplan proceeded to follow these instructions. Miller and Nelson followed Kaplan from the lake area. When Kaplan reached the highway, Miller and Nelson went in the opposite direction from Kaplan. When Kaplan stopped at a McDonald's pursuant to FBI instructions, however, Nelson's car also stopped. A passenger in Nelson's car approached Kaplan's car and looked in at Kaplan who was still seated in his car. Nelson then drove home in a manner designed to prevent others from following him.

On February 24, 1992, Fair confronted Alber. Alber admitted his part in the extortion plot. Alber claimed not to know Miller and Nelson, however. Upon their arrest, Miller and Nelson each denied involvement in the plot.[2]

On February 26, 1992, Alber was indicted on two counts. Count II charged Alber with mailing a threatening communication, in violation of 18 U.S.C. § 876. Count I charged Alber with conspiracy to commit the substantive offense in Count II. Miller and Nelson were also charged.

On January 20, 1993, Alber pleaded guilty to both counts.[3] However, Alber also told the district court that there was no conspiracy; he insisted that he had acted alone. In response, the government set forth specific facts to show that the conspiracy existed. The district court accepted Alber's plea to

---

1. Apparently, Fair was not aware that he was playing a role in a larger plan. After reading an article in the newspaper about the entire incident, Fair went to the police and told them he had made the February 13, 1992 phone call. The government gave Fair immunity from prosecution.

2. We note the following additional information regarding Miller and Nelson.

When first confronted about his presence at the lake, Miller explained that he and a friend were at the lake because they were chasing a rain cloud. Later, however, he changed his story, stating that they went to the lake to drink beer.

At the time the letter was sent, Nelson worked for Nicholas Lees, the contractor who built Marc Kaplan's house two or three years earlier. In addition, Nelson had made statements to some

people at this time that he, Nelson, was about to come into some money. Nelson further remarked that people in the vitamin business owed him big. (Kaplan was in the mail-order vitamin business at this time.)

Miller and Nelson claim that they had never seen each other before they were arrested, despite the fact that their cars were seen parked side by side at the lake.

Alber underwent two polygraph examinations. His responses regarding Miller and Nelson ranged from "inconclusive" to "untruthful" or "deceptive." His responses regarding other unnamed people being involved were also "untruthful."

3. Alber's plea was not accompanied by an agreement.

mailing a threatening communication, and took under advisement his plea to conspiracy. On January 21, 1993, the district court granted the government's motion to dismiss without prejudice the charges against Miller and Nelson.

Subsequently, at the first sentencing hearing, the district court reviewed the substantial evidence of the involvement of several persons in Alber's plot and then accepted his plea of guilty to the conspiracy count.[4] On April 30, 1993, Alber moved to withdraw his plea. Alber explained that he had been misinformed, asserting that he did not know that he could plead guilty to one count and request to go to trial on the other. On June 21, 1993, the district court denied Alber's motion to withdraw his plea.

The district court sentenced Alber to concurrent terms of 72 months in prison on each count, and three years of supervised release. Alber filed a timely notice of appeal. Alber is in federal custody serving his term of imprisonment.

## II. DISCUSSION

1. *Did the district court err by failing to advise Alber of the statutory maximum penalty for conspiracy, as required by Fed.R.Crim.P. 11?*

Alber contends that the district court erred by accepting his guilty plea without first informing him of the maximum penalty he could receive for the crime of conspiracy. *See* Fed.R.Crim.P. 11(c)(1). Specifically, Alber argues that the district court failed to inform him that he could be sentenced to a three-year term of supervised release in connection with the conspiracy count. Alber further argues that the district court failed to advise him that he could potentially face two

additional years in prison if his term of supervised release were revoked.

We review de novo the adequacy of a Rule 11 hearing. *United States v. Jaramillo-Suarez,* 857 F.2d 1368, 1369 (9th Cir.1988). The district court should have informed Alber of the specific number of years of supervised release he could receive. But, the district court's variance from the Rule 11 procedures was harmless error. *See* Fed.R.Crim.P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."). Alber's substantial rights were not affected because Alber knew before pleading guilty that he could be sentenced to a term as long as the one he eventually received. *United States v. Roberts,* 5 F.3d 365, 369 (9th Cir. 1993); *United States v. Clay,* 925 F.2d 299, 303 (9th Cir.1991). Specifically, Alber knew before pleading guilty that he could be sentenced to 25 years of imprisonment. But he was sentenced only to two concurrent, six-year terms, and three years of supervised release, the maximum allowable for a Class C felony. 18 U.S.C. § 3583(b)(2); U.S.S.G. § 5D1.2(b)(2). Accordingly, under the worst case scenario, Alber would serve his full six-year term of imprisonment, be on supervised release for one day less than three years before having his supervised release revoked, and be reincarcerated for an additional two years, pursuant to 18 U.S.C. § 3583(e)(3); *see Clay,* 925 F.2d at 303; *United States v. Sharon,* 812 F.2d 1233, 1234 (9th Cir.1987). Thus, at a maximum, Alber's liberty could be restricted for one day less than 11 years. Because one day less than 11 years is less than 25 years, Alber knew before pleading guilty that he could be sentenced to a term much longer than the one he eventually received. Accordingly, the district court's Rule

---

**4.** The district court identified the following evidence that there was a conspiracy:

(1) the letter itself which referred to the involvement of others;

(2) the polygraph examinations which strongly suggested that Alber was not being truthful about the involvement of others;

(3) the strong unlikelihood that a single individual hatched, planned and carried out the scheme executed; and

(4) the very strong improbability that coincidence explains:

(a) the presence of Miller and Nelson at the lake;

(b) the departure of Miller and Nelson from the lake at the same time Kaplan departed from the lake;

(c) the stopping of Nelson at the McDonald's at the same time Kaplan stopped at the McDonald's; and

(d) Miller's fingerprint on the phone used by Fair to call Kaplan.

11 error is harmless. *Clay*, 925 F.2d at 303; *United States v. Sanclemente–Bejarano*, 861 F.2d 206, 210 (9th Cir.1988) (per curiam).

*2. Did the district court err by sentencing Alber to 6 years in prison on the conspiracy count?*

We review de novo a district court's application of the Sentencing Guidelines. *United States v. Uzelac*, 921 F.2d 204, 205 (9th Cir. 1990).

■ Alber argues that the district court erred by sentencing defendant to 6 years on the conspiracy count. We agree. A defendant cannot be sentenced to a term longer than the statutory maximum. *See* U.S.S.G. § 5G1.2(b); U.S.S.G. § 5G1.1(a). The statutory maximum for conspiracy is 5 years. 18 U.S.C. § 371. Accordingly, the district court was required to set the sentence for the conspiracy count at no more than 5 years. *See* U.S.S.G. § 5G1.2 commentary. We remand for resentencing in accordance with 18 U.S.C. § 371 and U.S.S.G. § 5G1.2(b).

*3. Does a sufficient factual basis exist to support Alber's plea of guilty to conspiracy?*

■ Rule 11(f) requires the district court to satisfy itself that there is a factual basis for all elements of the offense charged before accepting a guilty plea. *United States v. Bos*, 917 F.2d 1178, 1181 (9th Cir.1990); *United States v. Alvarado–Arriola*, 742 F.2d 1143, 1144 (9th Cir.1984). To establish a factual basis for the plea, the court may consider all of the evidence before it at the time of judgment. *See* Fed.R.Crim.P. 11(f) advisory committee notes (1974 amendment). If a defendant enters a guilty plea while continuing to assert his innocence, the district court may accept it if there is "a strong factual basis." *North Carolina v. Alford*, 400 U.S. 25, 37–38, 91 S.Ct. 160, 167–68, 27 L.Ed.2d 162 (1970). "The court need not be convinced beyond a reasonable doubt than an accused is guilty. It need only be convinced that there is sufficient evidence to justify the reaching of such a conclusion." *United States v. Neel*, 547 F.2d 95, 96 (9th Cir.1976) (per curiam).

Alber argues that there was an insufficient factual basis for the district court to accept his plea of guilty to the conspiracy charge. *See* Fed.R.Crim.P. 11(f). Specifically, Alber argues that insufficient evidence existed that there were two or more persons involved.

■ We disagree. An examination of the record reveals a strong factual basis supporting Alber's plea of guilty to the charge of conspiracy. First, the letter itself refers to other persons involved. Second, Alber's polygraph examinations strongly suggested that others were involved. Specifically, Alber's denials were impeached by the results of the examinations. Third, Miller's fingerprint was found on the same phone that Richard Fair used to call Marc Kaplan. Fourth, at roughly the same time Kaplan was to arrive at the boat ramp, a vehicle registered to Miller was seen approximately ¼ mile away. Fifth, also at this time, a vehicle registered to Nelson pulled in and parked next to Miller's car. Sixth, the note at the boat ramp informed Kaplan that he was being watched.

Seventh, Miller and Nelson both left the lake at the same time Kaplan left. Eighth, Nelson arrived at the same McDonald's immediately after Kaplan arrived. Ninth, a passenger from Nelson's car approached Kaplan's vehicle and peered into Kaplan's vehicle from a distance of 10 feet away. Tenth, Nelson drove home from the McDonald's using what would normally be described as counter-surveillance techniques. Finally, Miller changed his story as to why he was at the lake that day at that time. *See Iannelli v. United States*, 420 U.S. 770, 777 n. 10, 95 S.Ct. 1284, 1289–90, 43 L.Ed.2d 616 (1975) (holding that the conspiratorial agreement may be proved by circumstantial evidence, including the acts and conduct of the coconspirators and the inferences that may be drawn from their acts); *United States v. Penagos*, 823 F.2d 346, 348 (9th Cir.1987) (noting that the existence of a conspiracy may be proved by circumstantial evidence that defendants acted together for a common illegal goal).

Alber counters that these facts all pertain to conduct that occurred after the letter was mailed, and thus that the record is devoid of

evidence that he had any coconspirators prior to the mailing. The charge is, however, conspiracy to mail a threatening communication. Again, we disagree. As noted, the record is replete with circumstantial evidence that Miller and Nelson were involved in carrying out the extortion scheme; the inference can reasonably be made that the two were also involved in fostering, planning and organizing the extortion scheme. Along with the letter itself, which refers to several individuals, this evidence constitutes a strong factual basis for Alber's guilty plea to the conspiracy charge. *Alford*, 400 U.S. at 38, 91 S.Ct. at 167–68.

*4. Did the district court err by prohibiting withdrawal of Alber's guilty plea to conspiracy?*

■ We review the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Rios–Ortiz*, 830 F.2d 1067, 1069 (9th Cir.1987). The district court may permit a defendant to withdraw a guilty plea before sentencing if the defendant meets the burden of establishing a fair and just reason. *See* Fed.R.Crim.P. 32(d); *Rios–Ortiz*, 830 F.2d at 1069. A defendant has no right to withdraw his guilty plea, *United States v. Castello*, 724 F.2d 813, 814 (9th Cir.), *cert. denied*, 467 U.S. 1254, 104 S.Ct. 3540, 82 L.Ed.2d 844 (1984); rather, the decision to allow withdrawal is within the sound discretion of the district court, *United States v. Signori*, 844 F.2d 635, 637 (9th Cir.1988).

Alber contends that there are two fair and just reasons for the district court to have permitted him to withdraw his plea of guilty. First, there was serious doubt as to whether there had been a conspiracy. Second, he did not understand that he could plead guilty to one count and go to trial on the other.

■ The district court did not abuse its discretion by prohibiting the withdrawal of the plea of guilty. Alber did not meet his burden of demonstrating a fair and just reason for the district court to permit the withdrawal. First, the district court found, by a preponderance of the evidence, that there was a conspiracy. Second, the district court found that the chronology of events "questions[s] seriously the defendant's position" that there was a misunderstanding. Alber allowed more than three months to pass after he first entered a plea of guilty before moving to withdraw. Then, he moved to withdraw his plea only after he realized that he was going to receive a heavier sentence than he expected. Specifically, defendant moved to withdraw his plea only after he knew the district court would depart upward for his leadership role and for the extreme psychological injury suffered by the Kaplans, and not depart downward for acceptance of responsibility.

*5. Was the charge of mailing a threatening letter with intent to extort properly charged in the indictment?*

■ We review de novo the sufficiency of an indictment. *United States v. Musacchio*, 968 F.2d 782, 786 (9th Cir.1991). Rule 7(c)(1) requires that an indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). "An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." *United States v. Buckley*, 689 F.2d 893, 896 (9th Cir.1982), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983). An indictment must be read in its entirety and construed in accord with common sense and practicality. *United States v. Drew*, 722 F.2d 551, 552 (9th Cir.1983), *cert. denied*, 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984); *United States v. Christopher*, 700 F.2d 1253, 1257 (9th Cir.), *cert. denied*, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983).

■ Section 876 of 18 U.S.C. contains four unnumbered paragraphs. Each paragraph defines a separate and independent crime involving the mailing of threatening communications. The crime defined in the second paragraph includes an intent to extort. It is punishable by not more than 20 years. The crime defined in the third paragraph does not include an intent to extort. It is punishable by not more than 5 years.

Alber argues that the indictment was not sufficient. Specifically, Alber contends that Count II of the indictment did not allege that he mailed the threatening communication with the intent to extort. Consequently, Alber asserts that he pleaded guilty only to the third paragraph of 18 U.S.C. § 876. Therefore, Alber concludes, he is not subject to a 20–year penalty, but rather only a 5–year penalty.

Alber's argument lacks merit. The indictment set forth the essential facts with such specificity as to inform him of the charge and enable him to plead double jeopardy. *Buckley,* 689 F.2d at 896. The indictment specifically stated that the letter contained the following threat: If Marc Kaplan does not pay $250,000 in cash in one week, his son's arm or leg will be amputated. This is per se extortion. Common sense would tell any reader that the letter was sent with the intent to extort. *Drew,* 722 F.2d at 552; *Christopher,* 700 F.2d at 1257.

*6. Did the district court err by departing upward pursuant to U.S.S.G. § 5K2.3?*

▮ The district court departed upward on the basis of the psychological injury to the members of the Kaplan family. Alber contends that the district court lacked authority to depart upward. U.S.S.G. § 5K2.3 authorizes an upward departure where the victim has suffered extreme psychological injury. U.S.S.G. § 5K2.3 applies only to the direct victim of the crime, however; it does not apply to others affected by the crime. *United States v. Hoyungowa,* 930 F.2d 744, 747 (9th Cir.1991). Here, the direct victim of the crime was Marc Kaplan. While Marc Kaplan's wife and son showed extreme psychological injury, Marc Kaplan did not. Therefore, U.S.S.G. § 5K2.3 did not apply. Consequently, the district court looked to U.S.S.G. § 5K2.0 as grounds to depart upward.[5] Alber contends that the district court was not permitted to look to U.S.S.G. § 5K2.0 as grounds to depart upward. He asserts that this option was foreclosed by the existence of U.S.S.G. § 5K2.3.

▮ A district court's decision to depart upward from the applicable Guidelines range is reviewed under a three-part test. *United States v. Lira–Barraza,* 941 F.2d 745, 746–47 (9th Cir.1991) (en banc). The first determination is whether the district court had legal authority to depart upward. The district court has legal authority to depart where two conditions are met. First, there must exist an aggravating circumstance of a kind or to a degree the Sentencing Commission did not adequately take into account when formulating the Guidelines. *See* 18 U.S.C. § 3553(b); *Lira–Barraza,* 941 F.2d at 746. Second, consideration of the aggravating circumstance must be consistent with the sentencing factors prescribed by Congress in 18 U.S.C. § 3553(a), the Guidelines, and the Constitution. Here, the district court identified the extreme psychological injury suffered by Marc Kaplan's wife and son as the aggravating circumstance. The Sentencing Commission expressly stated in Application Note 8 of U.S.S.G. § 2B3.2 that an upward departure may be warranted if the offense involved a threat to a family member of the victim. This express statement establishes beyond argument that departure was legally authorized. *Id.*

The second determination is whether the district court's findings of fact support the existence of the identified aggravating circumstance. 18 U.S.C. § 3742(d); *Lira–Barraza,* 941 F.2d at 746–47. Here, Alber did not even dispute that Marc Kaplan's wife and son suffered extreme psychological injury. Finally, the third determination is whether the extent of the departure from the applicable Guideline range was "unreasonable" within the meaning of 18 U.S.C. § 3742(e)(3) and (f)(2). *Lira–Barraza,* 941 F.2d at 747. This is not at issue here.

Accordingly, we conclude that the district court did not err by departing upward on the basis of the psychological injury suffered by the members of the Kaplan family. *See Lira–Barraza,* 941 F.2d at 746–47.

---

**5.** The district court reasoned that an upward departure was warranted because "the nature of what these folks have gone through is something

... different from that which the guidelines would normally address."

## III. CONCLUSION

For the foregoing reasons, we affirm in part and remand in part. Specifically, we remand to the district court with instructions to resentence Alber on the conspiracy count in accordance with 18 U.S.C. § 371 and U.S.S.G. § 5G1.2(b). We otherwise affirm Alber's sentence.

AFFIRMED IN PART and REMANDED IN PART.