UNITED STATES of America,
Plaintiff–Appellee,

v.

Fernando Novelo NOSTRATIS,
Defendant–Appellant.

No. 02–10296.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 2003.

Filed March 11, 2003.

Jehan'Ad G. Martinez, Klemm Blair Sterling & Johnson, Hagatna, Guam, for the defendant-appellant.

Marivic P. David, Assistant United States Attorney, Hagatna, Guam, for the plaintiff-appellee.

Before: SCHROEDER, Chief Judge, GOODWIN, and TASHIMA, Circuit Judges.

TASHIMA, Circuit Judge.

Fernando Nostratis appeals the district court's denial of his motion to withdraw his guilty plea. He contends that his plea was not knowing and voluntary because he did not understand English well enough to comprehend the terms, conditions, and consequences of his plea agreement. He argues that his inability to comprehend his plea agreement is a fair and just reason for the court to allow him to withdraw his plea under Federal Rule of Criminal Procedure 11(d)(2)(B). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

On October 20, 1999, a grand jury returned a four-count superseding indictment against Nostratis: conspiracy to import methamphetamine, 21 U.S.C. §§ 952(a), 960, and 963 (count I); importation of methamphetamine, 18 U.S.C. § 2 and 21 U.S.C. §§ 952(a), 960 (count II); attempt to possess methamphetamine with intent to distribute, 21 U.S.C. §§ 841(a)(1), 846 (count III); and use of a communication facility to facilitate a drug crime, 21 U.S.C. § 843(b) (count IV). After first pleading not guilty, on January 25, 2000, Nostratis changed his plea to guilty on counts I and III pursuant to a plea agreement. The district court conducted a Rule 11 hearing at which it found that Nostratis comprehended the terms, conditions, and consequences of his plea agreement, and accepted his plea.

After negotiating the plea agreement, Nostratis' defense attorney, Stephanie Flores, withdrew as counsel. The court then appointed William Gavras to represent Nostratis. A few months later, Gavras made a motion to withdraw as counsel, which the court denied after a hearing. Nostratis' presentence report came out on January 6, 2002, calculating his sentence range at 135 to 168 months. In accordance with the plea agreement, the government

filed for a two-level downward departure based on Nostratis' substantial assistance.

On the morning of March 22, 2002, the date set for his sentencing, Nostratis filed a motion to withdraw his plea. Nostratis, whose native language is Tagalog, argued that he did not understand English well enough to comprehend the terms, conditions, and consequences of his plea agreement and, therefore, he did not knowingly and intelligently enter into the agreement. The court held a hearing on Nostratis' plea withdrawal motion and then denied it, finding that he understood English well enough to comprehend his plea agreement. The court later granted the government's downward departure motion and sentenced Nostratis to 135 months. Nostratis appeals the denial of his motion to withdraw his plea.

## STANDARD OF REVIEW

■ The district court's denial of a defendant's motion to withdraw a plea is reviewed for abuse of discretion. *United States v. King*, 257 F.3d 1013, 1022 (9th Cir.2001). The court abuses its discretion when it "rests its determination on a clearly erroneous finding of fact." *United States v. Sherburne*, 249 F.3d 1121, 1125 (9th Cir.2001).

## DISCUSSION

■ Prior to sentencing, a defendant can withdraw his guilty plea only by showing a fair and just reason for withdrawal. Fed.R.Crim.P. 11(d)(2)(B);[1] *United States v. Ruiz*, 257 F.3d 1030, 1031 (9th Cir.2001) (en banc). A defendant does not always have the right to withdraw a plea because the decision to allow withdrawal of a plea

is solely within the discretion of the district court. *Id.* at 1033; *United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir.1995). The defendant has the burden to show a fair and just reason for withdrawal of a plea. *United States v. Myers*, 993 F.2d 713, 714 (9th Cir.1993).

■ Nostratis contends that his native language is Tagalog and, therefore, that a Tagalog interpreter should have been present at his Rule 11 hearing to help explain the plea agreement to him. He asserts that, as a consequence of not having the assistance of an interpreter, his acceptance of the plea agreement was not knowing and voluntary.

The district court found that Nostratis understood English well enough to comprehend his plea agreement. In making this determination, the court cited the thoroughness of the Rule 11 plea colloquy, as well as Nostratis' use of English in the Rule 11 hearing and the hearing on Gavras' motion to withdraw as counsel. The court also referred to the testimony of Flores and Probation Officer Maria Cruz during the hearing on Nostratis' motion to withdraw his guilty plea. In addition, the court reasoned that the length of time between Nostratis' plea and his plea withdrawal motion, combined with his knowledge of his likely sentence due to the presentence report, weakened his argument. The record shows that the court did not clearly err in making its factual finding.

The district court correctly examined the thoroughness of the Rule 11 plea colloquy to determine whether Nostratis comprehended his plea agreement. *See Unit-*

---

**1.** Before December 1, 2002, Rule 11(d)(2)(B) was found in Rule 32(e). Despite minor language changes in the rule, the "fair and just reason" standard remains the same; also, before the 1994 amendments, Rule 32(e) was Rule 32(d). *See* Fed.R.Crim.P. 11 Advisory Committee Notes (2002 Amendments); Fed. R.Crim.P. 32 Advisory Committee Notes (1994 Amendments).

ed States v. Rios–Ortiz, 830 F.2d 1067, 1070 (9th Cir.1987) (stating that Rule 11 requirements "are designed to ensure that the criminal defendant who pleads guilty understands exactly what the plea means"); *United States v. Cook,* 487 F.2d 963, 965 (9th Cir.1973) (focusing on the thoroughness of the Rule 11 plea colloquy in a plea withdrawal case). Where the district court conducts a thorough Rule 11 hearing, this is strong evidence that the defendant comprehended the plea agreement. *See United States v. Signori,* 844 F.2d 635, 639 (9th Cir.1988) (upholding a district court's denial of a plea withdrawal motion after a careful review of the Rule 11 hearing transcript); *United States v. Castello,* 724 F.2d 813, 815 (9th Cir.1984) (upholding the denial of a plea withdrawal motion where the district court conducted a "particularly searching" Rule 11 hearing).

The Rule 11 inquiry here was thorough. The district court first questioned Nostratis to make sure that he understood the plea proceeding and that he was not under the influence of any drugs. Then the court informed Nostratis about the nature of the crime and its elements, the maximum and minimum sentences for his crime, the role of the Sentencing Guidelines, and the constitutional rights that he waived by pleading guilty. Nostratis said that he had read the plea agreement and discussed it with his lawyer, and that he was satisfied with his representation. Finally, Nostratis accepted the plea agreement's statement of facts and pled guilty. All the court's questions and Nostratis' answers were in English; throughout the hearing, Nostratis coherently responded to the court in English without the aid of an interpreter. *See Gonzalez v. United States,* 33 F.3d 1047, 1051 (9th Cir.1994) (upholding the district court's decision that no interpreter was necessary because, during the Rule 11 plea colloquy, "[t]he defendant's answers were consistently responsive, if brief and somewhat inarticulate, and he only occasionally consulted with his attorney").

Nostratis points to a particular exchange where the court asked him whether he comprehended his plea agreement, and he responded, "I understand, but not hundred percent clearly from my mind." In isolation, this response seems to support Nostratis' argument. When we view this response in context, however, we find that the court continued to question Nostratis until it was satisfied that he comprehended the plea agreement.[2]

It is true that, during the hearing on Nostratis' motion to withdraw his plea,

---

2. The following exchange was in English.

Court: Now, do you understand the terms of the plea agreement?
Nostratis: I understand, but not hundred percent clearly from my mind.
Court: But your lawyer has explained it to you?
Nostratis: She explained it to me yesterday.
Court: And you're satisfied with that explanation?
Nostratis: Yes, Your Honor.
Court: That you understand it—you understand it, at least the most important parts to it?
Nostratis: Yes, sir.
Court: Okay. Now, does the plea agreement represent all your understandings, or whatever deal you cut with the government?
Nostratis: Yes, sir.
Court: Okay. Has anyone made other promises to you or assurances, other than what's in this plea agreement, in order get [sic] you to plead guilty?
( [Nostratis] [c]onfers with counsel.)
Nostratis: Nothing, Your Honor.
Court: Okay. Has anyone attempted in any way to force you to plead guilty today?
Nostratis: No.
Court: Are you pleading guilty of your own free will because you are guilty?
Nostratis: Yes, Your Honor.
Change of Plea Hearing Tr. at 7–8.

Nostratis testified through an interpreter that he did not understand English well enough to comprehend his plea agreement. However, the district court could reasonably have chosen to credit Nostratis' declarations made in open court while under oath during the Rule 11 hearing over his subsequent testimony more than two years later, especially since Nostratis knew his likely sentence at that time. *See Castello*, 724 F.2d at 815 ("The court was entitled to credit Castello's testimony at the Rule 11 hearing over her subsequent affidavit."); *see also Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir.1989) (" '[S]olemn declarations in open court carry a strong presumption of verity.' ")(quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)). Nothing in the Rule 11 hearing suggests that the district court clearly erred in its determination that Nostratis understood English well enough to comprehend his plea agreement.

The district court also cited the hearing on Gavras' motion to withdraw as counsel as evidence of Nostratis' ability to understand English. At that hearing, Gavras attested to Nostratis' English abilities, saying that Nostratis had shown through his speech and written letters a "pretty good understanding of the [sentencing] guidelines, which we know are complicated." At one point, Gavras said that he and Nostratis "talked at length" in English about issues in the case, and Nostratis "understood every word" of the conversation. Gavras also told the court that he had asked Nostratis if he needed a Tagalog interpreter, which Nostratis declined.[3] In fact, the record shows that during this hearing Nostratis spoke competently in English on his counsel's ineffectiveness for three pages of transcript, interrupted only by a few short questions from the court.

In its order, the district court also relied on the testimony of Flores, Nostratis' former counsel, and Cruz, who interviewed Nostratis for his presentence report. Flores testified that she went over the plea agreement with Nostratis line-by-line, that Nostratis comprehended the plea agreement, and that she would not have let Nostratis sign the plea agreement if he had not understood it. During the Rule 11 hearing, whenever a legal point was unclear for Nostratis, Flores explained it to him until he understood. All communications between Flores and Nostratis were in English, including six letters to Flores written in English by Nostratis (many of them longer than a page). Flores testified that she would have requested an interpreter for Nostratis had one been necessary.

Cruz testified that all her communications with Nostratis were in English and that Nostratis had no trouble understanding her. Cruz also testified that, if Nostratis had not understood English, she would have terminated the interview and retained an interpreter before resuming it. According to Cruz, during an interview about Nostratis' upbringing, Nostratis gave her a three page letter written in English describing his upbringing and told her, in English, "you don't need to ask me questions about that because I've written this down for you." Cruz testified that, during another interview, Nostratis turned to Gavras and asked, in English, "what

3. At the end of the hearing, the court did tell Gavras that he could apply for a Tagalog interpreter to assist when necessary in attorney-client meetings (which he did), while remarking that Nostratis "can communicate fairly well in English, he's very articulate." The court appointed another interpreter during the hearing on Nostratis' plea withdrawal motion.

about the 5K1.1 departure, don't I get substantial assistance[?]"

The court could reasonably have chosen to credit the testimony of Flores and Cruz over the contrary testimony of Nostratis and the ambiguous testimony of Tagalog Interpreter Primo Caburian.[4] *See United States v. Shwayder*, 312 F.3d 1109, 1118–19 (9th Cir.2002) ("Ordinarily, the district court's determinations of credibility ... should not be second-guessed."); *see also United States v. Navarro–Flores*, 628 F.2d 1178, 1183–84 (9th Cir.1980) (per curiam) (upholding the district court's assessment that the testimony of the former defense counsel and the court interpreter was more credible than that of the defendant in a plea withdrawal case).

Additionally, the district court noted the more than two-year delay between Nostratis' guilty plea (January 25, 2000) and his plea withdrawal motion (March 22, 2002). As the court mentioned in its order, the time between the plea and the plea withdrawal motion is a factor to consider in ruling on that motion. *See* Fed.R.Crim.P. 32 Advisory Committee Notes (1983 Amendment) (" '[I]f the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerably more force.' ") (quoting *United States v. Barker*, 514 F.2d 208, 222 (D.C.Cir.1975)). Courts have rejected plea withdrawal motions where the delay was much shorter than two years. *See Alber*, 56 F.3d at 1111 (listing as a reason for rejecting the plea withdrawal motion that three months elapsed between the plea and the motion); *Navarro–Flores*, 628 F.2d at 1184 (one-month delay); *see also United States v. Santiago*, 229 F.3d 313, 318 (1st Cir.2000)

(nine months); *United States v. Durham*, 178 F.3d 796, 798–99 (6th Cir.1999) (seventy-seven days); *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2nd Cir.1992) (seven months). Nostratis gave no reason why he waited so long to file his plea withdrawal motion, nor did he contend on appeal that he lacked competent counsel during the two years between his plea and his motion. This two year delay suggests that the "withdrawal was intended to serve a different purpose than that avowed" by Nostratis. *Navarro–Flores*, 628 F.2d at 1184.

■ In its order, the district court found that Nostratis moved to withdraw his plea because he was upset with his likely sentence. A defendant cannot withdraw his plea because he realizes that his sentence will be higher than he had expected. *See Alber*, 56 F.3d at 1111 (upholding denial of a plea withdrawal motion where the defendant "moved to withdraw his plea only after he realized that he was going to receive a heavier sentence than he expected"); *Shah*, 878 F.2d at 1162 ("Nor do we believe that fear of receiving a harsh sentence, standing alone, constitutes a 'fair and just' reason to withdraw a plea[.]"). Defendants cannot plead guilty to "test the weight of potential punishment" and then withdraw their plea if the sentence is "unexpectedly severe." *United States v. Ramos*, 923 F.2d 1346, 1359 (9th Cir.1991), *overruled on other grounds by Ruiz*, 257 F.3d at 1032. In the instant case, Nostratis moved to withdraw his plea only after learning from the presentence report that his likely sentencing range was 135 to 168 months and that the government would only move for a two-level downward depar-

---

4. Interpreter Caburian testified that some native Tagalog speakers have trouble understanding abstract concepts in English, but

also that Nostratis knew when to say he did not understand and knew what he meant when he said "I understand."

ture. Moreover, Nostratis waited until the date set for his sentencing to make his plea withdrawal motion.[5] Nostratis' knowledge of his likely sentence, taken together with the unexplained two-year delay between his plea and his plea withdrawal motion, support the district court's factual determination that Nostratis understood English well enough to comprehend his plea agreement.[6]

## CONCLUSION

The district court did not clearly err in finding that Nostratis understood English well enough to comprehend his plea agreement. Nostratis did not provide a fair and just reason to withdraw his plea and the district court did not abuse its discretion by denying Nostratis's plea withdrawal motion. The judgment of the district court is

**AFFIRMED.**

---

5. Nostratis filed his motion at the last possible moment. Upon receiving his sentence, Nostratis could not have withdrawn his plea. At that point, Nostratis' plea could only have been set aside upon direct appeal or by collateral attack, which require the higher "manifest injustice" standard. Fed.R.Crim.P. 11(e); *King,* 257 F.3d at 1024.

6. Nostratis briefly argues that the district court incorrectly applied the law, citing two cases that do not support his claim. First, unlike the defendant in *Kadwell v. United States,* 315 F.2d 667 (9th Cir.1963), Nostratis received a thorough Rule 11 hearing, did not plead guilty under any misrepresentation about penalties, and had competent counsel who had full knowledge of the case. *Id.* at 670–71. Second, in *United States v. Fragoso–Gastellum,* 456 F.2d 1287 (9th Cir.1972) (per curiam), as in this case, the defendant had competent counsel during a thorough Rule 11 hearing.