**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

VLADIMIR STEVEN HERNANDEZ,

*Defendant-Appellant*.

No. 22-50134

D.C. No.
2:19-cr-00715-
VAP-1

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, Chief District Judge, Presiding

Argued and Submitted December 5, 2023
Pasadena, California

Filed June 28, 2024

Before: Kim McLane Wardlaw, Kenneth K. Lee, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Lee;
Dissent by Judge Bumatay

# SUMMARY[*]

## Criminal Law

The panel vacated the district court's order denying Vladimir Horowitz's motion to withdraw his guilty plea, and remanded, in a case in which the panel addressed whether a criminal defendant's belated realization that his safety-valve proffer could lead to reprisal in prison counts as a "fair and just" reason to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d)(2).

The panel held that a defendant must first offer in good faith a "new" basis for seeking to withdraw his plea, meaning that he subjectively did not know this "new" reason for withdrawal at the time of his plea. He then must show that objectively he could not have known or anticipated this "new" material reason. Even if a defendant offers a good-faith "new" basis for withdrawing his plea, that reason is not a "fair and just" one under Rule 11 if a reasonable person could have known about it or anticipated it at the time of the plea.

The panel held that the district court did not err in concluding that Hernandez offered in good faith a subjectively new basis for withdrawing his plea (*i.e.*, he did not know that defendants who obtained safety-valve reductions were treated as cooperators by other inmates).

But the district court did not decide whether objectively Hernandez could have known about or anticipated this new

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and material reason for withdrawing the plea. The panel remanded so that the district court can decide whether a reasonable person would have known that people who proffer under the safety valve face potential threats in prison and how that information would have plausibly affected a defendant's decision-making calculus.

Dissenting, Judge Bumatay wrote that the majority's new two-part test for withdrawal of a guilty plea is too far a stretch from Fed. R. Crim. P. 11(d)(2)(B)'s requirement that a defendant must show a "fair and just reason for requesting the withdrawal." He would affirm the district court's decision to deny the withdrawal of the plea.

## COUNSEL

Andrew M. Roach (argued), Assistant United States Attorney, Cyber & Intellectual Property Crimes Section; Jonathan Galatzan, Assistant United States Attorney; Bram M. Alden, Assistant United States Attorney, Criminal Appeals Section Chief; Annamartine Salick, Assistant United States Attorney, National Security Division Chief; Cameron L. Schroeder, Assistant United States Attorney, National Security Division Chief; E. Martin Estrada, United States Attorney; Office of the United States Attorney, United States Department of Justice, Los Angeles, California; for Plaintiff-Appellee.

Steven A. Brody (argued), Law Offices of Steven Brody, Pasadena, California, for Defendant-Appellant.

## OPINION

LEE, Circuit Judge:

We address whether a criminal defendant's belated realization that his safety-valve proffer could lead to reprisal in prison counts as a "fair and just" reason to withdraw his guilty plea.

When Vladimir Hernandez pleaded guilty to felony meth distribution charges, he agreed to tell the government everything he knew in exchange for a chance at a lower sentence under the safety-valve sentencing provision. But soon after Hernandez entered the plea, he apparently learned for the first time that other inmates may not take too kindly to his cooperation. He now swears that he would not have agreed to the favorable plea deal if he had known that seeking a safety-valve sentence reduction would subject him to potential peril in prison.

District courts may allow a defendant to withdraw a plea before sentencing if he offers a "fair and just" reason for doing so. *See* Fed. R. Crim. Pro. 11. We have interpreted the "fair and just" standard to include a reason that did not exist when the defendant entered the plea. But a defendant cannot withdraw his plea for just any "new" reason. To withdraw a plea, a defendant must show that (1) the "new" reason is being offered in good-faith and that he subjectively did not know this reason for his plea withdrawal at the time of the plea, and (2) it was objectively reasonable to have not known about or anticipated this material new reason, either.

Here, the district court concluded that Hernandez offered in good-faith a subjectively new basis for withdrawing his plea (*i.e.*, he did not know that defendants who obtained

safety-valve reductions were treated as cooperators by other inmates). But the district court did not decide whether objectively Hernandez could have known about or anticipated this new and material reason for withdrawing the plea. We thus vacate and remand for the district court to decide that issue.

## BACKGROUND

Vladimir Hernandez entered an open guilty plea related to two felony meth distribution charges on November 9, 2021. At the time of his plea, Hernandez's attorney advised him that unless Ninth Circuit caselaw was overturned, he would be eligible for safety-valve treatment (meaning, a chance at a sentence below the statutory minimum) if he told the government about his involvement in the offense. His attorney also assured him that a safety-valve proffer was not the same as cooperating with the government or acting as an informant on other defendants. Hernandez, who had not served time in a federal facility, states that he believed his attorney.

While Hernandez was not guaranteed that he would receive safety-valve treatment, he was likely to receive it. At the time, our decision in *United States v. Lopez* made him eligible to proffer, and he remained eligible unless or until the Supreme Court overturned *Lopez*. *See* 998 F.3d 431, 444 (9th Cir. 2021).[1] And if he proffered truthfully, the district court would have had no discretion to deny him the safety-valve. *United States v. Real-Hernandez*, 90 F.3d 356, 361 (9th Cir. 1996).

---

[1] *Lopez* has since been abrogated. *See Pulsifer v. United States*, 144 S. Ct. 718, 723 (2024). But the parties agree that we should analyze the law as it existed at the time of the plea withdrawal request.

But within five months of entering the plea—before the pre-sentencing report came out and despite his safety-valve eligibility—Hernandez moved to withdraw it.   In his withdrawal request, Hernandez explained that, while in custody, he learned that even if his safety-valve proffer were not literally the same as cooperating with the government, other inmates would not see a distinction.  They would see only that Hernandez received a sentence below the statutory minimum, assume that he had cooperated with the government, and treat him accordingly.  So, in other words, Hernandez learned that a major benefit of his plea (the chance at a sentence below the statutory minimum) came with a major downside (being targeted by other inmates).

Based on this new information, Hernandez "decided that the threat to [him] [wa]s too great" and that he would no longer seek safety-valve treatment, even if it meant that he potentially would have to serve a longer prison sentence.  He swore that he "would not have entered a plea and would instead have proceeded to trial or sought some other resolution" if he had known this fact earlier.

The month after Hernandez moved to withdraw his plea, the district court held a hearing on his request.[2]  Hernandez argued that the new information about the danger of a safety valve proffer was a "fair and just" reason to withdraw the plea because it was "not something [Hernandez] could have been advised of by an attorney prior to going into custody" but "something that he learned after . . . he went into custody."  The government argued that Hernandez's safety-valve concerns were disingenuous and that he acted "on a

---

[2] Judge André Birotte presided over the withdrawal motion hearing.

lark" because he was unhappy with the likely length of his sentence.

The district court largely agreed with Hernandez, stating that it "did not think Hernandez [wa]s doing this on a lark at all." The district court also accepted that Hernandez did not know when entering the plea—and "maybe" could not have known—that safety-valve proffers were treated as cooperation.

Despite those findings, the district court concluded that Hernandez could avoid the consequences of the safety-valve proffer by not proffering. And while that would guarantee that Hernandez received at least a statutory minimum sentence, Hernandez had voluntarily accepted the risk of a statutory minimum sentence when he entered his plea. Because Hernandez's concerns could be "alleviate[d]" without withdrawing the plea, the district court found that those concerns were not "fair and just" reasons for withdrawal and denied the motion.

Hernandez timely appealed.

## STANDARD OF REVIEW

We review the denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir. 1995).

## ANALYSIS

## I. A defendant may withdraw his plea for a "fair and just" reason.

Federal Rule of Criminal Procedure 11(d)(2) permits a defendant to withdraw his guilty plea before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. Rule Crim. Pro. R. 11(d)(2). Given

the vague definitions of "fair" and "just," our decisions have tried to provide more concrete guidance on when a defendant can withdraw his plea deal. To start, we have interpreted Rule 11's "fair and just" standard broadly, requiring district courts to freely allow withdrawal anytime the defendant provides "any . . . reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008); *see also United States v. Bonilla*, 637 F.3d 980, 983 (9th Cir. 2011). Those reasons may include "inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *Id.* (citation, internal quotation marks, and emphasis omitted).[3]

But while we have interpreted Rule 11 broadly, not every "new reason" a defendant offers will merit withdrawal. The district court need not permit a defendant to withdraw his plea, for example, if the district court does not believe his reason for doing so is genuine. *See United States v. Nostratis*, 321 F.3d 1206, 1211 (9th Cir. 2003). And even if a defendant offers in good faith a new reason to withdraw his plea, the district court must consider whether that reason could "at least plausibly" have motivated the defendant "not to have pled guilty." *Davis*, 428 F.3d at 808.

---

[3] While withdrawal requests often hinge on evidentiary issues, *see, e.g.*, *McTiernan*, 546 F.3d at 1168, that is not always the case. We have also considered collateral consequences and changes in law to be "new reasons" that allow withdrawal. *See Bonilla*, 637 F.3d at 983 (newly discovered risk of deportation); *United States v. Davis*, 428 F.3d 802, 805 (9th Cir. 2005) (newly discovered information about the defendant's likely sentence); *United States v. Rodriguez-Gamboa*, 946 F.3d 548, 551 (9th Cir. 2019) (change in law).

We thus hold that a defendant must first offer in good faith a "new" basis for seeking to withdraw his plea, meaning that he subjectively did not know this "new" reason for withdrawal at the time of his plea. This "new" reason thus cannot be a pretextual excuse to renege on a plea deal and must be offered in good faith. He then must show that objectively he could not have known or anticipated this "new" material reason, either. Only then can the district court exercise its discretion to allow a plea withdrawal under Rule 11's "fair and just" standard.

### A. A defendant must first offer a good-faith "new" basis for withdrawing his plea.

A criminal defendant may not withdraw his plea without offering a good-faith "new" reason for doing so: he must show that he genuinely did not know of this "new" reason to withdraw his plea at the time of his plea deal, and that this new reason is not a pretextual excuse. Otherwise, a defendant may merely be experiencing buyer's remorse or engaging in gamesmanship to undo his plea based on a pretextual "new" reason.

In *Nostratis*, for example, the defendant sought to withdraw his plea because he claimed he had not understood its terms. 321 F.3d at 1208. The district court rejected that explanation, finding that the defendant had instead changed his mind about his decision to plea. *Id.* at 1211. We held that the defendant's cold feet were not a "fair and just" reason to withdraw the plea: the defendant knew the downsides and the risks of his plea when he entered it, and he had no good-faith new basis for withdrawing it. *Id.*

So too in *United States v. Briggs*. The defendant there claimed that he had "lacked the capacity" to understand his plea agreement. 623 F.3d 724, 727 (9th Cir. 2010). The

district court rejected that claim, finding that it was not made in good faith. *Id.* at 728. Instead, as in *Nostratis*, the defendant's "true complaint" was simply that he had "underestimated the severity of the sentence that he faced" until he was "face-to-face with the full consequences of his conduct." *Id.* at 728–29. As in *Nostratis*, we held that the defendant knew the potential severity of the sentence at the time he entered his plea, and thus it was not a good-faith, "fair and just" reason for withdrawal. *Id.*

Put another way, defendants who "plead guilty to 'test the weight of potential punishment' and then withdraw their plea[s] if the sentence is 'unexpectedly severe'" lack good-faith, fair and just bases for withdrawing their pleas. *Nostratis*, 321 F.3d at 1211 (quoting *United States v. Ramos*, 923 F.2d 1346, 1359 (9th Cir. 1991), *overruled on other grounds by United States v. Ruiz*, 257 F.3d 1030, 1302 (9th Cir. 2001)). In other words, a district court can always smoke out a pretextual "new" reason for withdrawing a plea if it suspects that it is not being offered in good faith.

The district court here did not abuse its discretion in concluding that Hernandez acted on a good-faith basis when he sought to withdraw his plea. It rejected the government's claim that Hernandez was engaging in gamesmanship, stating instead that the court "d[idn't] think Mr. Hernandez [was] doing this on a lark at all." And despite the government's insistence otherwise, the district court seemingly accepted that Hernandez genuinely did not know the dangers of a safety-valve proffer when he entered the plea. And contrary to the government's contention that Hernandez merely changed his mind about pleading guilty, Hernandez's proffered reason for withdrawal appears sincere.

First, the timing of his withdrawal request suggests that he is not testing the waters or having second thoughts. Hernandez sought to withdraw just five months after his plea was entered—*before* his pre-sentencing report had come out—at a time when the only "new information" available to him was that he learned that he could face reprisals for cooperating. *See United States v. Garcia*, 401 F.3d 1008, 1013 (9th Cir. 2005) (noting that the timing of a withdrawal request can be a "barometer of the defendant's candor about his reasons for withdrawal"). Put differently, this is not a case in which a defendant learns that he will face a longer sentence than he expected (or than the prosecutors recommended), and then tries to wriggle his way out of his plea.

Equally important, Hernandez's plea withdrawal request would have likely led to a *more severe* sentence, undercutting the inference that he is trying to game the system to avoid a harsh punishment. Unlike the defendants in *Nostratis* or *Briggs* who had buyers' remorse and feared long prison sentences, Hernandez was eligible for a safety-valve treatment at that time but wanted to withdraw his plea for reasons primarily unrelated to the length of any prison sentence. *See Lopez*, 998 F.3d at 444.

We thus conclude that the district court did not err in finding that Hernandez acted in good faith and subjectively did not know at the time of his plea his "new" basis for seeking withdrawal.

**B. A defendant must also show that it was objectively reasonable that he could not have known about or anticipated the "new" material reason for withdrawal at the time of the plea.**

While the district court found that Hernandez offered a good-faith basis for withdrawing his plea, that alone does not entitle him to withdraw it. The court still must decide whether "proper [information] 'could have at least plausibly motivated a person in [the defendant's] position not to have pled guilty." *McTiernan*, 546 F.3d at 1168 (quoting *Garcia*, 401 F.3d at 1011–12). In analyzing that requirement, the district court must address whether objectively the defendant could not have known about or foreseen this "new" material basis for withdrawal at the time of his plea. *Id.*

Whether a material reason for withdrawing a plea is objectively new depends on what the defendant could have reasonably understood or anticipated when he entered the plea. For example, if a defendant was advised of the terms of his plea before it was entered, those terms cannot later serve as "fair and just" reasons for withdrawal. *See Nostratis*, 321 F.3d at 1211. So too if the defendant should have known, but subjectively misunderstood, the potential severity of his likely sentence. *Briggs*, 623 F.3d at 728. But if a defendant was misled about a term of his plea—and he could not have been expected to understand it on his own— the defendant may have an objectively reasonable new basis for withdrawing the plea. *See Davis*, 428 F.3d at 805.

We have held, for example, that a defendant may withdraw his plea if his lawyer misled him about a material consequence of his plea agreement and the defendant could not have reasonably foreseen that consequence. *Id.* In *Davis*, the defendant's counsel "grossly mischaracterized"

the defendant's likely sentence, advising that he would receive probation when in fact there was "little, if any, possibility" that he would be sentenced "to anything close to probation." *Id.* Because the plea colloquy and information available to the defendant did not contradict his counsel's erroneous predictions, we concluded that the defendant may not reasonably have questioned counsel's inaccurate advice. *Id.* at 806–07. We thus remanded for the district court to consider whether accurate advice could have "plausibly" affected the decision to enter the plea. *Id.* at 808.

By contrast, consider a defendant who cooperates with police, testifies against other defendants, and pleads guilty. He may not withdraw his plea—even if he genuinely learns later that inmates may view him as a "snitch"—because a reasonable criminal defendant would be aware of how inmates may treat cooperators. *Cf Nostratis*, 321 F.3d at 1211. Nor could a defendant withdraw his plea for collateral consequences that, even if not spelled out in the plea agreement, a reasonable person would expect—such as loss of child custody, restrictions on gun ownership or voting, or hindered job prospects. In those cases, district courts should not permit withdrawal because the defendants' reasons, even if subjectively new to them, are not objectively new and thus not fair and just.

In short, even if a defendant offers a good-faith "new" basis for withdrawing his plea, that reason is not a "fair and just" one if a reasonable person could have known about it or anticipated it at the time of the plea.

The dissent says that our holding "authorizes withdrawal based on *any* new, relevant post-plea information—even completely foreseeable information—so long as it was truly new to the defendant and not a sham." Dissent at 22. Not

so. We expressly state in our opinion that "not every 'new reason' a defendant offers will merit withdrawal." Op. at 8. We explain that the district court can reject the request to withdraw if it doubts that the defendant's reason is not "genuine" or not in "good faith," even it is purportedly based on "new" information. *Id.* at 8-9. So, for example, we note that the district court can reject the request if it believes that the real reason for it is "buyer's remorse or . . . gamesmanship to undo his plea." *Id.* at 9. Put another way, a district court must probe whether the defendant's claim that he subjectively learned this new information is in fact being offered in good faith and is not pretextual. And not only that, the district court then must examine whether the defendant objectively could have been aware of this new material information.

Take the dissent's hypothetical of a grandmother, who after returning from a long vacation, learns that her grandson pleaded guilty and opposes it. Dissent at 23-24. The dissent argues "[u]nder the majority's view, grandma's urgings would be enough to withdraw the plea." *Id.* Quite the contrary. First, the district court would have to analyze whether a defendant is acting in good faith in offering his "new" reason. The court may well conclude that this is a pretextual and bogus reason to wriggle his way out of a plea agreement if, for example, it appears that he raised this "new" information only after learning that the Pre-Sentencing Report recommended a more severe sentence. And even if the district court concludes that the defendant has offered a subjectively new reason in good faith, it still must address whether the defendant objectively could have known about or foreseen this new material information. One of the obvious expected consequences of being convicted of a crime is that it will have a negative impact on the

defendant's family members and friends. So objectively speaking, a defendant should have known that pleading guilty—and serving prison time—would have a detrimental effect on his grandmother and other family members, even if he learns for the first time later that his grandmother opposes his guilty plea. And he thus likely would not be able to withdraw his plea by invoking his grandmother's plight.

In sum, our holding today does not establish a new test, nor does it make withdrawing a plea deal "more lenient," as the dissent states. Rather, our decision merely synthesizes strands of our case law into a coherent framework for analyzing requests for plea withdrawals.[4]

## II. On remand, the district court should consider whether Hernandez offered an objectively reasonable new "fair and just" reason to withdraw his plea.

The district court here concluded that Hernandez in good faith offered a subjectively new basis for withdrawing his plea. But rather than decide whether that basis was also objectively new, the district court focused on futility and the likely outcome if withdrawal was permitted. The district court believed that a withdrawal was beside the point because Hernandez could refuse to cooperate, not face reprisal in prison, and serve the statutory minimum sentence.

---

[4] The dissent believes that Hernandez's request to withdraw his plea should have been denied because a "defendant cannot withdraw his plea because he realizes that his sentence will be higher than he had expected." Dissent at 25. But the district court rejected that characterization because the facts suggests that his request is not based on his sentence being potentially higher than expected. Hernandez made his request *before* the PSR was issued, suggesting that this was not gamesmanship based on a potentially severe sentence. To the contrary, he wanted to withdraw his safety-valve plea deal, meaning that he likely would receive a *more severe* sentence.

And even if he did withdraw his plea, the district court reasoned that he would likely end up striking a similar plea deal or face conviction at trial and the same statutory minimum sentence.  Hernandez responds that he would have rejected the safety-valve plea deal had he known about the treatment of safety-valve cooperators and that he potentially could have prevailed at trial.

The district court is perhaps correct that the outcome would likely have been the same.  But in determining whether a plea withdrawal is "fair and just," it is the objective inquiry—whether the "new reason" for withdrawal would have "plausibly affected" the decision to plead guilty—that matters, not the outcome of the case.  *Davis*, 428 F.3d at 808.

In Hernandez's case, a reasonable person might understand that a defendant who provides information to the authorities under a safety-valve provision may face retaliation in prison.  Thus, one could argue that "new" information about a safety valve proffer could not plausibly have affected Hernandez's decision to plead guilty.  *See Garcia*, 401 F.3d at 1011–12.  In other words, Hernandez should have known or anticipated that some inmates would disapprove of someone who receives a more lenient sentence after cooperating.  On the other hand, Hernandez suggests that most people would think that safety-valve cooperators are different from other defendants who cooperate with or testify for the government, and that it was reasonable to think they would not be targeted by other inmates.  This might especially be the case where, as here, he claims that his attorney assured him that a safety-valve proffer is "not the same as cooperating with the government."  The district court suggested in passing that some people "maybe" would

not have known that safety-valve proffers were treated as cooperation. But it did not resolve that question.

On remand, the district court should decide whether a reasonable person would have known that people who proffer under the safety valve face potential threats in prison and how that information would have plausibly affected a defendant's decision-making calculus.

## CONCLUSION

The district court's order denying Hernandez's motion to withdraw his guilty plea is **VACATED** and **REMANDED** so that the district court may determine whether Hernandez offered a fair and just reason for withdrawing his plea.

---

BUMATAY, Circuit Judge, dissenting:

Vladimir Hernandez rolled the dice. He gambled that, after pleading guilty, he would receive a reduced sentence under the "safety valve" sentencing provision. *See* 18 U.S.C. § 3553(f). Yet his gamble did not pay off. He had second thoughts about truthfully disclosing his drug trafficking activities to the government, which is required for safety valve relief. *See id*. § 3553(f)(5). So he didn't get a sentence below the mandatory minimum because he didn't fulfill his end of the safety-valve bargain. *See United States v. Thompson*, 81 F.3d 877, 879 (9th Cir. 1996) (a defendant is not eligible for safety valve if he "chooses to not comply with" its proffer requirement). But just because Hernandez rolled the dice and came up empty doesn't mean he gets new chips to play the game again. Withdrawing a guilty plea is no game. It's a serious matter—a "grave and solemn act to be accepted only with care and discernment." *See Brady v. United States*, 397 U.S. 742, 748 (1970).

That's not to say withdrawal is never permitted. To withdraw a guilty plea, a defendant must show a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). And this "fair and just reason" standard is "applied liberally." *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004) (simplified). Even so, the rule must have some limiting principles. After all, permitting withdrawal for *any reason* would give it no teeth. Reflecting the seriousness of plea withdrawal, we defer to the discretion of the district court to decide these questions. *See United States v. Mayweather*, 634 F.3d 498, 504 (9th Cir. 2010). And here, the district court did not abuse its discretion.

Because the majority's new two-part test for withdrawal is too far a stretch from a "fair and just reason," I respectfully dissent.

## I.

### A.

What exactly does "fair and just reason" mean? At the time of the language's inclusion in the Federal Rules of Criminal Procedure in 1983, "fair" was defined as "[h]aving the qualities of impartiality and honesty; free from prejudice, favoritism, and self-interest" and "[j]ust; equitable; even-handed; equal, as between conflicting interests." *Fair*, Black's Law Dictionary (5th ed. 1979). And "just" meant "[c]onforming to or consonant with what is legal or lawful; legally right; lawful[;] [c]orrect, true, due" and "[r]ight; in accordance with law and justice." *Just*, Black's Law Dictionary (5th ed. 1979) (simplified). Of course, these definitions reflect the terms' broad meanings outside the context of the criminal justice system. So it's more important to turn to that context.

The "fair and just" phrase appears to come from an old Supreme Court case. *See* Fed. R. Crim. P. 32 advisory committee's note (1983) (discussing Rule 11(d)'s predecessor provision). Almost a hundred years ago, the Court opined that "[t]he court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just." *Kercheval v. United States*, 274 U.S. 220, 224 (1927) (simplified). In that case, the Court suggested such reasons include a guilty plea "unfairly obtained or given through ignorance, fear or inadvertence." *Id.*; *see also* Bishop's New Criminal Procedure, § 747 (4th ed. 1895) ("[W]e may assume . . . of permitting prisoners, not as of right, but whenever justice or humanity dictates, to withdraw any plea, whether dilatory or to the merits, and substitute for it any other."). So while still broad when originally formulated, the standard had some heft to it. Not any reason will do; withdrawing is appropriate only if it's *required*.

Other sources show the same thing. The Advisory Committee on Criminal Rules provides:

> Although the terms "fair and just" lack any presence of scientific exactness, guidelines have emerged in the appellate cases for applying this standard. Whether the movant has asserted his legal innocence is an important factor to be weighed, as is the reason why the defenses were not put forward at the time of original pleading.

Fed. R. Crim. P. 32 advisory committee's note (1983) (simplified). The Advisory Committee further cautioned

that the Rule "rejects" the view that "any desire to withdraw the plea before sentence is 'fair and just' so long as the government fails to establish that it would be prejudiced by the withdrawal." *Id*. It instead "adopts" the position that "the defendant [must] first show[] a good reason for being allowed to withdraw his plea." *Id*. So under this guidance, *any reason* isn't sufficient; withdrawal is usually tied to reasons related to innocence or asserting a new defense. In fact, the Supreme Court has even suggested that a claim of innocence isn't enough; it must be coupled with a valid showing that the plea was improperly taken. *See Dukes v. Warden*, 406 U.S. 250, 257 (1972) (despite claimed innocence, the defendant could not prove his counsel had a conflict of interest affecting his plea and so it was "not a reason for vacating his plea" (simplified)).

Our court has historically been on the "lenient" side of interpreting "fair and just." *See* Paul E. Gartner Jr., Withdrawal of Guilty Pleas in the Federal Courts Prior to Sentencing, 27 Baylor L. Rev. 793, 794 (1975) ("The Ninth Circuit Court of Appeals apparently adopted the lenient rule of the District of Columbia Court of Appeals[.]"). We've given broad examples of what's a "fair and just reason," including "inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008) (simplified). *McTiernan* represents the current state of our precedent.

And while giving us broad strokes, some of *McTiernan*'s strokes miss the canvas if read in isolation. Indeed, even under the most generous reading of the terms, no one would say a reason was "fair and just" simply because it "did not exist when the defendant entered his plea." *Id.* (simplified).

So despite this capacious language, "each case must [still] be reviewed in the context in which the motion arose to determine whether, ultimately, a 'fair and just' reason exists."  *Id*.  So any old "new" reason doesn't justify withdrawal; we still consider whether it is fair and just.

Reading "any other [new] reason" otherwise would violate the structure of Rule 11(d).  Consider that Rule 11(d) permits a defendant to withdraw a plea "for any reason or no reason" if it occurs *before* the court accepts the plea.  Fed. R. Crim. P. 11(d)(1).  But if the defendant waits until *after* the court accepts the plea, as here, the defendant must show that withdrawal is for a "fair and just reason."  *Id*. at 11(d)(2)(B).  Allowing literally "any other [new] reason" to justify a withdrawal *after* court acceptance of the plea effectively eliminates Rule 11(d)(2)(B).  It collapses Rule 11(d) into a single inquiry that permits the low standard reserved for pre-acceptance plea withdrawals to authorize post-acceptance plea withdrawals.  But that's not what Rule 11(d) says.  And we should be careful to cast away a standard meant to uphold finality and respect for the court.

The "any other [new] reason" language appears to originate from *United States v. Rios-Ortiz*, 830 F.2d 1067, 1069 (9th Cir. 1987).  But that case didn't purport to set a standard of what's "fair and just."  It simply described what happened in that case.  Consider its language: "Rios-Ortiz does not challenge the adequacy of his Rule 11 hearing, nor does he allege newly discovered evidence, intervening circumstances, or any other reason for withdrawing his plea that did not exist when he pleaded guilty."  830 F.2d at 1069.  It's wild that this descriptive sentence has morphed almost 40 years later into the primary test under Rule 11(d).

**B.**

And unfortunately, the majority expands the reach of the "any other [new] reason" category. It adopts a new two-part test for determining when a "new reason" exists. But that test provides little in the way of a limiting principle or grounding in the text of Rule 11(d). Under the majority's novel test, a defendant can withdraw a plea if he shows that: "(1) the 'new' reason is being offered in good-faith and that he subjectively did not know this reason for his plea withdrawal at the time of the plea, and (2) it was objectively reasonable to have not known about or anticipated this material new reason, either." Maj. Op. 4. That's it. All we need is *any reason* that's not completely irrelevant and that's subjectively and objectively "new." I fear the majority makes an already *too lenient* standard even *more lenient*. It lowers the bar so much that it risks serious repercussions for the future of plea bargaining throughout our circuit. And it deepens the gulf from the text of Rule 11(d).

The majority's new Rule 11(d)(2)(B) test authorizes withdrawal based on *any* new, relevant post-plea information—even completely foreseeable information—so long as it was truly new to the defendant and not a sham. But new, relevant information often emerges after the defendant pleads guilty. Recall that only defendants with certain criminal history points are eligible for safety valve. *See* 18 U.S.C. § 3553(f)(1). The defendant may plead guilty without fully knowing how his criminal history will score or if he will otherwise qualify for safety valve. He might have thought, for example, that a prior conviction aged out and no longer scores. Or the government's preliminary criminal-history report might not have been complete. After Probation conducts a more thorough criminal-history check, other convictions might come to light which disqualify the

defendant from safety valve.  Another question mark is if the defendant can meet the requirement to "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense."  *See id*. § 3553(f)(5). Sometimes the defendant isn't truthful or doesn't want to meet with the government, like here.

So changes in safety-valve eligibility are commonplace and completely foreseeable.  But we have *never* said that a defendant's dashed hope for safety valve is good enough reason to withdraw a plea.  In fact, we've suggested the opposite.  *See, e.g.*, *United States v. Rubio-Perez*, 357 Fed. Appx. 771, 773 (9th Cir. 2009) (unpublished) (affirming denial of plea withdrawal after the court denied defendant safety valve because he lied about his criminal history); *United States v. Piedra*, 428 Fed. Appx. 713, 715 (9th Cir. 2011) (unpublished) (affirming the denial of plea withdrawal after defendant could not qualify for safety valve because he was "untruthful" during his safety-valve interview). Condoning "any new reason" to withdraw a plea would drastically upset our settled law for guilty pleas and disrupt our respect for the finality of these decisions.

And really, *any* new reason suffices here?  Imagine some other hypothetical defendant pleaded guilty to an offense with a lengthy sentence.  Now suppose the defendant's grandmother had been on a long vacation.  On her return, she learned the defendant had pleaded guilty and subsequently begged him not to do so.  Under the majority's view, grandma's urgings would be enough to withdraw the plea.  It would be subjectively new and in "good faith"—it was the first time grandma communicated her views to the defendant and it was genuine because the defendant always takes her advice to heart.  And it would be objectively reasonable that the defendant didn't know earlier—he was in jail and she

was on vacation. It would also be "material" because the defendant's consideration of his family's wishes is certainly relevant to the decision to plead guilty. But how is this a "fair and just reason"? How does this not reduce our standard to an all new low? The majority bats away this hypothetical by merely saying the defendant "should have known" or "anticipated" his grandma's views—fair enough. But the majority doesn't explain why being in jail and grandma being on vacation isn't a sufficient excuse for not knowing that information. And even so, the majority basically concedes that a defendant with an objectively good excuse for not knowing or anticipating grandma's wishes would be sufficient grounds for withdrawal. This hypothetical demonstrates the precise problem with this newly minted test—that it can be haphazardly and subjectively applied.

Finally, the majority tries to limit its sweeping ruling by claiming that the defendant's "new" reason must be in "good faith," "genuine," and not "pretextual." But it's hard to see what invoking these adjectives does here. It should go without saying that trying to pull a fast one on the court is not a "fair and just" reason to withdraw a plea. Not giving a sham reason should be, of course, a *necessary* condition for withdrawing a plea—but the majority also makes it a *sufficient* one. Essentially, the majority adopts an "on-a-lark" test for withdrawal. As long as there's no gamesmanship and withdrawing wasn't "on a lark," any new reason suffices. That's not even close to what Rule 11's text requires.

## C.

Rather than go down this road and further diminish an already lenient standard, we could have simply followed our

well-developed precedent holding that "[a] defendant cannot withdraw his plea because he realizes that his sentence will be higher than he had expected." *United States v. Nostratis*, 321 F.3d 1206, 1211 (9th Cir. 2003); *see also United States v. Briggs*, 623 F.3d 724, 728 (9th Cir. 2010) (a defendant cannot "change his plea solely because he underestimated the severity of the sentence he faced"); *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) ("Nor do we believe that fear of receiving a harsh sentence, standing alone, constitutes a 'fair and just' reason to withdraw a plea."). While on rare "occasion" our court has "allowed a defendant to change his plea for such a reason, we have done so only in exceptional circumstances," *Briggs*, 623 F.3d at 728–29, such as when counsel "grossly mischaracterized" the defendant's possible sentence, *United States v. Davis*, 428 F.3d 802, 805–08 (9th Cir. 2005). And this high bar makes sense. After all, things happen all the time between entering a plea deal and sentencing, and our criminal justice system wouldn't benefit from constantly shifting pleas.

Here, the information Hernandez learned while in custody—that other inmates might view his safety-valve proffer as cooperation—would only go to the length of his sentence. This new information may have caused him to choose to forgo safety valve, but—at the end of the day—he would be sentenced under the mandatory-minimum offenses he knowingly and voluntarily pleaded guilty to. Nothing changed about the facts of his case, nothing favorable changed in the law, and nothing changed about his defenses to the charges. He hasn't said he is innocent. And he was well counseled during plea negotiations. Counsel told him he was not guaranteed safety valve and he could be denied safety valve for failing to truthfully debrief with the government. The new information changed only one

thing—it made it more likely he'd received a higher sentence.

Hernandez's change of heart is really no different from a defendant being denied safety valve because of an unsuccessful debrief or a belatedly discovered conviction making him ineligible. None of these justify a withdrawal. Just because Hernandez now refuses to go through with a safety-valve proffer based on the perceived risks of debriefing, that does not mean he gets a do-over. *See United States v. Salazar*, 61 F.4th 723, 728 (9th Cir. 2023) ("Being labeled a 'snitch' or a 'rat' undoubtedly carries significant risks for inmates. But that is a risk Congress has established in the statutory scheme and which every defendant must face in order to qualify for safety-valve relief."). In fact, time has shown that Hernandez isn't even eligible for safety valve anyway because our court has been wrongly interpreting § 3553(f) all along. *See Pulsifer v. United States*, 144 S. Ct. 718 (2024), abrogating *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021).

## II.

For these reasons, I respectfully dissent and would have affirmed the district court's decision to deny the withdrawal of the plea.